**UNITED STATES of America, Plaintiff,**

v.

**Duane O. HESTNES, Defendant.**

**No. 77–CR–23.**

United States District Court,
W. D. Wisconsin.

July 9, 1980.

John A. Franke, Asst. U. S. Atty., W. D. Wisconsin, Madison, Wis., for plaintiff.

James M. Shellow, James R. Glover of Shellow & Shellow, Milwaukee, Wis. and Victor Mussallem, Madison, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Defendant was found guilty by a jury on the second count of an indictment in which he was charged with having wilfully and knowingly attempted to evade and defeat a large part of an income tax due and owing by him and his wife for calendar 1971, by filing a false and fraudulent return which understated their taxable income by about $55,000. Defendant has moved for an order setting aside the verdict and acquitting him and, if that motion is denied, for an order granting him a new trial.

The essence of the government's case is that during calendar 1971, the defendant pocketed specific receipts from specific customers in his meat business without depositing them in his business bank account and without reporting them as 1971 income on his tax return for 1971.[1] This method of proof is spoken of as the specific items of income method. Therefore, it was the government's obligation to prove beyond a reasonable doubt that the defendant's failure to deposit and report these 1971 cash receipts from his customers resulted in a failure to report 1971 income.

As the government concedes in its post-trial brief, the evidence permits no finding other than that during the period preceding, following, and including calendar 1971, defendant followed an accrual method of accounting. Nevertheless, again as the government now concedes, the government intended from the start of the trial to persuade the court that if it proved that specific payments were received from customers in 1971 and not deposited and reported, each was to be allocated to 1971 income "essentially on a cash basis." As this intention on the government's part was revealed in the course of the presentation of its case-in-chief, it was objected to, of course, and there ensued a discussion among the court and counsel which persisted to the point at which jury instructions were decided upon.

Among the instructions as given was the following:

The jury may not assume without evidentiary support that checks were income in the year in which they were negotiated. If you find from the evidence that the taxpayer was on an accrual basis in 1971, then the government would be bound to follow an accrual method in making its calculations. This means that defendant's income would have been required to be reported in the year in which it is earned. Before any gross receipts could be considered as income in 1971, the

[1.] In this opinion I will use the term "cash" to include checks, currency, or coins.

government would be required to prove to your satisfaction that the gross receipts were in payment for merchandise shipped and invoiced in 1971.

Because, at defendant's urging, the theory embodied in the jury instruction just quoted was embraced by the court early in the trial, the government was compelled to improvise and reimprovise its proofs and its theory, contending initially that allocation of income to 1971 "essentially on a cash basis" was permissible; then that the evidence supported the inference that all of the unreported cash received in 1971 was for merchandise delivered and invoiced in 1971 (with minor year-end inferences as to when the cash actually reached defendant); then that the evidence supported the inference that of the unreported cash received in 1971, the portion shown to have been received for merchandise delivered and invoiced in 1971 was substantial enough to support a conviction; and so on. Although the government continues to contend that the evidence was sufficient to show that a substantial portion of the unreported cash received in 1971 was in payment for goods delivered and invoiced in 1971, it now relies principally on a theory developed in its brief in opposition to defendant's post-trial motions: namely, that even if the accrual method is fully recognized in this case, the failure to report cash received in 1971 resulted in a failure to report 1971 income, whether it was received in 1971 for merchandise delivered and invoiced in 1971 or for merchandise delivered and invoiced at some earlier time.

■ The essence of the accrual method is that the taxpayer is required to report the price of goods sold as income for the year in which the goods are sold. For a taxpayer who commences a business on January 1, 1970, for example, it would be necessary to report as 1970 income the price of all goods sold in 1970. If this obligation is met for 1970, the taxpayer is under no further obligation. That is, the taxpayer is not re-

quired to inform the government at some later time that payment for the sale has now been received. On the other hand, if the taxpayer fails to meet this obligation to report as 1970 income the price of goods sold in 1970, the violation has occurred with respect to the 1970 tax year.[2]

It is possible for an accrual taxpayer to adopt the technique of adding up invoices for goods sold and delivered in 1970 and reporting the total as 1970 income, and then a year later adding up the invoices for goods sold and delivered in 1971 and reporting the total as 1971 income.

■ There is another technique for achieving this same result. Rather than to add up all one's invoices for goods sold and delivered in 1970 in a business commenced on January 1, 1970, for example, one may report the sum of cash received in 1970 from one's customers, plus the sum of the invoices for goods sold and delivered in 1970 but for which the customers have not paid by December 31, 1970. This latter sum represents the accounts receivable on December 31, 1970. This technique discharges the obligation to report as income for 1970 the price of all goods sold in 1970.

A taxpayer employing this technique can repeat the process for 1971 by reporting the sum of cash received in 1971 from one's customers, plus the sum of the invoices for goods sold and delivered in 1971 but for which the customers have not paid by December 31, 1971. As was true for 1970, this technique discharges the obligation to report as income for 1971 the price of all goods sold in 1971.

However, for a business with a history commencing prior to January 1, 1971 (in the example, a business which commenced January 1, 1970), there is a danger that this technique may result in overreporting income for 1971. A portion of the cash received from customers in 1971 may have been in payment for goods sold in 1970; that is, for sales already reported as 1970

---

2. This defendant has not been charged with, or found guilty of, conduct with respect to his tax return for 1971 which amounted to conceal-

ment of a failure to report 1970 income in his return for 1970.

income although payment had not been received in 1970 from the purchasers. If so, to use that particular portion of 1971 cash receipts as a reflection of sales made in 1971 is to distort. Also, the accounts receivable as of December 31, 1971 may include some carryovers from 1970 sales, the proceeds of which were receivable as early as December 31, 1970 and which were reported as 1970 income. Therefore, from the combination of 1971 cash receipts and the accounts receivable as of December 31, 1971 there must be deducted all accounts receivable as of December 31, 1970. The resulting figure includes only those cash receipts in 1971 and only that portion of the accounts receivable as of December 31, 1971 which reflect sales made during 1971.

Faithfully followed tax-year in and tax-year out by an accrual taxpayer, the technique just described is valid and acceptable for income tax purposes only because of the integrity of each of its three components: (1) a number accurately aggregating all opening accounts receivable; (2) a number accurately aggregating all closing accounts receivable; and (3) a number accurately aggregating all cash receipts during the intervening year. When components (1) and (2) are accurate, an inaccuracy in component (3) inevitably distorts the figure which emerges from the mixture of the three components: that is, the figure which purports to reflect the price of the goods delivered and invoiced in the given year. When the inaccuracy in component (3) inheres in the omission of cash received during the intervening year, there is an understatement of the price of goods delivered and invoiced during that year and thus, on the accrual system, an understatement of income for that very year. Because each of the three components is itself an aggregate number, the understatement of income for the very year occurs whether the specific unreported cash received that year was in payment for goods delivered and invoiced in that year or for goods delivered and invoiced at some earlier time.

My understanding is that the proposition which I have stated in the preceding paragraph of this opinion is the proposition upon

which the plaintiff now takes its stand and which it has embraced in its brief in opposition to the defendant's post-trial motion for acquittal. I accept it.

As I have observed above, the technique of using cash receipts during a given year, such as 1971, as a reflection of the price of goods actually delivered and invoiced in 1971, is a valid and acceptable technique for an accrual taxpayer only because of the integrity of each of the three components. As I have also observed, when the integrity of component (3)—the aggregation of all cash receipts during 1971—is undermined by distortion, the technique results in an inaccurate computation of the price of goods delivered and invoiced in 1971. However, it follows that when the integrity of either component (1) or (2)—the aggregation of the accounts receivable as of January 1, 1971 and December 31, 1971, respectively—is undermined by distortion, the computation is also invalid and unacceptable.

■ Let us assume, for example, that on a day in 1970 defendant had delivered and invoiced to customer A goods priced at $4000, and that A had not made payment by the close of business on December 31, 1970. It would have been defendant's tax obligation to report that sale as 1970 income by including it in his closing accounts receivable as of December 31, 1970. Had he failed to include it among the accounts receivable, he would have understated his 1970 income and, had the elements of knowledge and wilfulness been present, the criminal evasion for 1970 would have been complete.

If we assume further that some time in 1971 customer A had paid defendant the $4,000 for the 1970 delivery, then had defendant included this payment in his cash receipts for 1971, the result of combining components (1), (2) and (3) for 1971 would have been an overstatement of 1971 income by $4,000. With respect to cash actually received during 1971, omissions of up to $4,000 would have reduced the distortion *pro tanto*, and the omission of a full $4,000

would have eliminated it. So far as a correct report of 1971 income is concerned (that is, the price of goods delivered and invoiced during 1971), it would have been irrelevant whether such an omission from cash receipts had been carefully noted and explained in the business books and records and even on the tax return or the omission had been accomplished simply by pocketing one or several payments received from customers in 1971. If the latter course had been chosen, it would also have been irrelevant whether a specific receipt of cash thus pocketed had been a payment for goods delivered and invoiced in 1971 or for goods delivered and invoiced at some earlier time.[3]

To put all this somewhat differently, the crime charged in this case requires the government to prove that the defendant knowingly and willfully understated in his tax return for 1971 the price of the goods he delivered and invoiced in 1971. Had all of the invoices for goods delivered and invoiced in 1971 been available to the government as evidence, it might have been in a position to prove that defendant reported as 1971 income a sum significantly less than the aggregate price reflected in those invoices. The attempt, however, was to prove the understatement of 1971 income by proving that the third component of three components of a certain formula had been distorted by the defendant. Proof of such a distortion of that third component, however strong, is insufficient without proof that the distortion resulted in an understatement of income for 1971.[4] The latter proof must establish that there had been no compensating distortion of the first component (the figure which represented the closing balance of accounts receivable for 1970 and the opening balance of accounts receivable for 1971) and no compensating distortion of the second component (the figure which represented the closing balance of accounts receivable for 1971).

Inadequate would be a kind adjective to describe the government's proof concerning the first and second components—the balance of accounts receivable as of December 31, 1970 and January 1, 1971 and the balance of accounts receivable as of December 31, 1971. The validation of the source of the $15,701.40 figure for the 1971 closing balance of accounts receivable was virtually nonexistent, and the validation of the source of the $8,200 figure for the 1971 opening balance was hardly more impressive. But even if it were accepted that those two figures appeared somewhere in defendant's books and records, there was a total absence of evidence that either figure was a true and accurate aggregation of the price of goods actually delivered and invoiced prior to the pertinent date but as yet unpaid. If the $8,200 figure was significantly less than the true aggregate of 1971 opening accounts receivable or if the $15,701.40 figure was significantly greater than the true aggregate of 1971 closing accounts receivable, an understatement of the cash received during 1971 may have been merely compensating. That is, an understatement of the cash received during 1971 may or may not have resulted in an understatement of the price of goods delivered and invoiced during 1971.

The instruction given the jury and quoted early in this opinion strongly implied that with respect to each specific 1971 cash receipt which was allegedly unreported by defendant as cash received in 1971, it was necessary for the government to prove that the payment was for goods delivered and invoiced some time in 1971. This was the manner in which, during the trial, defendant's counsel had stated his contention and also the manner in which the court had expressed its view on the issue. As explained in this opinion, I now believe that at best the instruction given was poorly expressed and that under certain conditions an understatement of cash received by de-

---

3. A similar example could be stated to demonstrate the effect of an overstatement of the December 31, 1971 accounts receivable.

4. I appreciate that defendant challenges strongly the adequacy of the proof that defendant pocketed and diverted to nonbusiness uses any of the cash he received from customers in 1971. I express no opinion on that question.

fendant in 1971 could have resulted in an understatement of the price of goods delivered and invoiced during 1971, whether a particular omitted cash receipt was in payment for goods delivered and invoiced during 1971 or delivered and invoiced at some earlier time.

That the instruction given was poorly expressed does not give rise to a problem in the administration of this particular case, however. This is because, viewing the evidence most favorably to the plaintiff, a judgment of acquittal is necessary whether the rule properly governing the case is as expressed in the instructions given or as I would now express it.

No jury could reasonably have found, either beyond a reasonable doubt or even by a preponderance of the evidence, that any specific cash receipt in 1971, which the jury believed to have gone unreported, was in payment for goods delivered and invoiced in 1971.

On the other hand, a more accurately phrased instruction would have informed the jury that only under certain conditions, relating to the true opening and closing balances of accounts receivable, would the failure to report this or that specific receipt of cash in 1971 have resulted in an understatement of the price of goods delivered and invoiced during 1971.

No jury could reasonably have found either beyond a reasonable doubt or even by a preponderance of the evidence, that those certain conditions were present: that the stated figures for the 1971 opening and closing balances of accounts receivable, whatever the evidence may have shown those stated figures to be, were accurate aggregations of the accounts truly receivable at the pertinent dates. Therefore, no reasonable jury could have found that an understatement of the cash received in 1971, if there had been such understatement, had resulted in an understatement of the price of goods delivered and invoiced in 1971 and, therefore, an understatement of defendant's 1971 income.

*Order*

It is ordered that defendant's motion for judgment of acquittal on Count II of the indictment is granted. The defendant is released from any and all restrictions imposed upon him as a result of the return of the indictment in this case.